993 F.2d 1540
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Norman Hunter LAMSON, Defendant-Appellant.
 No. 92-5777.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: April 7, 1993
Decided: May 20, 1993
 
 Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. Samuel G. Wilson, District Judge. (CR-92-41-C)
 Norman Hunter Lamson, Appellant Pro Se.
 Ruth Elizabeth Plagenhoef, Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before MURNAGHAN and WILKINS, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Norman Hunter Lamson appeals from his conviction for impeding and disrupting the performance of official duties by Government employees, in violation of 41 C.F.R. § 101-20.305 (1992). After considering Lamson's multifarious attacks, we find no error and, accordingly, affirm his conviction and sentence.
 
 I.
 
 2
 On January 16, 1992, Lamson, an attorney in Charlottesville, Virginia, refused repeated requests by United States Deputy Marshal Barry Surles and General Services Administration ("GSA") Federal Protective Services employee John Ferguson to submit to GSA security screening procedures before entering the Federal Courthouse Building in Charlottesville (the "Courthouse"). Specifically, Lamson refused to walk through a magnetometer[1] and to submit his files to X-ray inspection. Finally, after repeated warnings by Surles that Lamson was interfering with his official duties and that continued disruptions would result in Lamson's arrest, Lamson agreed to walk through the magnetometer while holding his files. When the magnetometer went off, indicating high levels of metal on Lamson's person, Lamson ignored Surles' orders to stop and continued walking. After pulling away from Surles' grasp, Lamson was arrested. The entire encounter lasted about thirty minutes, delayed the entry of several persons into the building, and allowed at least one other person who had set off the magnetometer to get into the building without undergoing further screening procedures.
 
 
 3
 Evidence presented at the one-day bench trial showed that, at the time of the incident, signs posted at the building's entrance required persons entering the building to submit to a security check and set forth all relevant statutes, rules, and regulations, including § 10120.305. Surles testified that, on the day of the incident, extra security precautions were being taken due to the crisis in the Persian Gulf, two active courts in session, and the presence of a high risk prisoner with serious medical problems who had threatened Marshal Service and court personnel. There was evidence that, in May 1991, after causing a similar disturbance at the courthouse, Lamson ultimately submitted to the screening procedures.
 
 
 4
 Lamson was convicted of the offense, based on the court's findings that Lamson's conduct unreasonably obstructed the usual use of the Courthouse's entrance, impeded and disrupted Surles and Ferguson in the performance of their official duties, and prevented the general public from obtaining the administrative services provided by the various agencies within the Courthouse[2] in a timely manner. He was sentenced to one year probation and a $500 fine, with the execution of payment of $250 suspended.
 
 II.
 A.
 
 5
 Lamson begins with a tripartite challenge to the facial validity of the bill of information, citing its failure to: (1) allege that the incident occurred on property under GSA control; (2) allege that his conduct was willful and unlawful; and (3) describe the conduct and official duties purportedly impeded and disrupted by Lamson. We determine the sufficiency of an information by practical, rather than technical, considerations. See United States v. Cobb, 905 F.2d 784 (4th Cir. 1990), cert. denied, 59 U.S.L.W. 3482 (U.S. 1991). We find the information is indeed valid, because its statement of the offense's elements is sufficiently detailed as to enable Lamson to prepare his defense, as evidenced by his extensive pretrial pleadings, including a thirteen page affidavit and three briefs totalling in excess of 100 pages. See United States v. Miller, 471 U.S. 130 (1985); United States v. Fogel, 901 F.2d 23 (4th Cir.), cert. denied, 498 U.S. 939 (1990).
 
 
 6
 Section 101-20.305 requires only that the alleged conduct occur on government property. United States v. Brice, 926 F.2d 925, 928 (9th Cir. 1991). The information sufficiently alleged that the incident occurred in the Courthouse. Any additional allegation that the Courthouse was under GSA control was unnecessary. Fed. R. Crim. P. 7(c)(1). Moreover, the absence of an allegation that Lamson's acts were done "unlawfully" is irrelevant, becauses 101-20.305 does not expressly set forth "unlawfully" as an essential element. See United States v. Rohn, 964 F.2d 310, 312-13 & n.2 (4th Cir. 1992).
 
 
 7
 As a general intent crime, § 101-20.305 does require proof that the acts were done knowingly and willfully. Brice, 926 F.2d at 929-30; see also United States v. Lewis, 780 F.2d 1140, 1142 (4th Cir. 1986) (absent explicit requirement of specific intent, a criminal charge is presumed to be a general intent crime). The information alleged that Lamson acted "knowingly and intentionally." We find that any distinction between willfully and intentionally in this case is inconsequential, because they are "adverb[s] of similar import and context" that contemplate a voluntary or conscious, as opposed to involuntary or inadvertent, exercise of one's will. Fogel, 901 F.2d at 25; see United States v. Grande, 620 F.2d 1026, 1036 (4th Cir.), cert. denied, 449 U.S. 830 (1980); United States v. Moore, 586 F.2d 1029, 1032 (4th Cir. 1978). "The use of either term to describe the criminal mind of the appellant would have been sufficient to inform the appellant of the charge against him." Fogel, 901 F.2d at 25.
 
 
 8
 Finally, the information is not vitiated by its failure to describe the conduct and official duties purportedly impeded and disrupted by Lamson's behavior. If additional facts were needed, Lamson's available remedy was a motion for a bill of particulars.[3] United States v. American Waste Fibers Co., 809 F.2d 1044, 1047 (4th Cir. 1987).
 
 B.
 
 9
 Lamson argues his conviction is invalid due to the illegality of the underlying magnetometer search, in violation of his First and Fourth Amendment rights and his Sixth Amendment right to a public trial. However, the "administrative search" exception to the Fourth Amendment permits the "limited warrantless search of a person seeking to enter sensitive facilities ... if 'conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of crime.' " Klarfeld v. United States, 944 F.2d 583, 586 (9th Cir. 1991) (quoting United States v. $124,570 U.S. Currency, 873 F.2d 1240, 1243 (9th Cir. 1989)). We find that the requested magnetometer and X-ray screening was constitutionally reasonable, minimally intrusive, consistent with the vital, legitimate government interest of protecting the Courthouse and the federal employees and general public therein from violence, and not violative of Lamson's Fourth Amendment rights. McMorris v. Alioto, 567 F.2d 897 (9th Cir. 1978). We find no support for Lamson's assertion that the search infringed his First Amendment right to free speech or Sixth Amendment right to a public trial. Hence, the constitutionally permissible magnetometer search does not invalidate Lamson's conviction.
 
 C.
 
 10
 Lamson's argument that the court erred by not holding an evidentiary hearing on his motion to dismiss is also unavailing. The court obviated the need for a hearing by presuming the truth of all matters set forth in Lamson's affidavit. As no other reason for conducting an evidentiary hearing was forthcoming, the court's refusal to conduct such a hearing was appropriate.
 
 D.
 
 11
 Lamson claims the district court erred by denying his motion for a jury trial. However, as a class C misdemeanor under 18 U.S.C. § 3559(a)(8) (1988), § 101-20.305 is a"petty offense" under 18 U.S.C. § 19 (1988). Because there is no constitutional right to a jury trial for a petty offense, the court properly denied Lamson's motion for jury trial. United States v. Coppins, 953 F.2d 86, 89 (4th Cir. 1991).
 
 E.
 
 12
 Finally, Lamson challenges the sufficiency of the evidence to support his conviction. The pertinent inquiry on such a challenge is whether, taking the evidence in the light most favorable to the government, any reasonable trier of fact could have found Lamson guilty on the charge beyond a reasonable doubt. United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). Our review of the record indicates that, in addition to the mental elements and location of the conduct discussed above, the Government proved beyond a reasonable doubt that (1) a copy of the regulation was posted in a conspicuous place on the property, (2) Surles and Ferguson were government employees, and (3) Lamson's conduct unreasonably obstructed the usual use of the entrance, and impeded and disrupted Surles and Ferguson in the performance of their official duties, and prevented the general public from obtaining the administrative services provided on the property in a timely manner. Brice, 926 F.2d at 925; see also United States v. Bader, 698 F.2d 553, 554-55 (1st Cir. 1983) (the government need prove only one of the alternative categories listed in the regulation). Hence, the evidence presented amply supported Lamson's conviction.
 
 III.
 
 13
 For the reasons stated herein, we affirm Lamson's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 A magnetometer is a device, fashioned like a door frame, for the detection of levels of metal carried and concealed on a person's body. The unit has an attached X-ray machine used to screen packages
 
 
 [2]
 The Courthouse contains offices for Social Security, the Department of Defense, GSA, the Internal Revenue Service, and the federal courts
 
 
 [3]
 Lamson also appeals the district court's denial of his motion for a bill of particulars for information pertaining to the time and place of the disturbance and the official duties purportedly disrupted by Lamson's acts. Because Lamson's pretrial pleadings indicate that he already had access to this information and because the Government maintained an open-file policy throughout this case, see United States v. Duncan, 598 F.2d 839, 849 (4th Cir.), cert. denied, 444 U.S. 871 (1979), we find the court did not abuse its discretion in denying Lamson's motion and Lamson suffered no actual prejudice thereby. United States v. Bales, 813 F.2d 1289 (4th Cir. 1987)